NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BENJAMIN R. BARRON (Cal. Bar No. 257094)
Assistant United States Attorney
Deputy Chief, OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3542
    Facsimile: (213) 894-0141
    E-mail:    Ben.Barron@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>MINAS MATOSYAN, et al.,<br><br>      Defendant. | No. CR 17-480-PSG<br><br>PLEA AGREEMENT FOR DEFENDANT MINAS MATOSYAN |

    1.   This constitutes the plea agreement between MINAS MATOSYAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to:

       a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. Minas Matosyan, et al.</u>, CR No. 17-480-

PSG, which charges defendant with conspiracy to distribute controlled drugs including oxycodone and hydrocodone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).

  b.   Not contest facts agreed to in this agreement.

  c.   Abide by all agreements regarding sentencing contained in this agreement.

  d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

  g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

  h.   Not to move or otherwise seek to withdraw defendant's guilty plea in this matter.

  i.   Agree to imposition of the following terms of supervised: (1) defendant shall not work for any business or facility (including in any capacity as an owner, manager, or supervisor) that provides medical care, handles prescription drugs, or is involved with medical billings of any kind; and (2) defendant shall not possess any identification document or prescription in any name other than his true legal name.

2

1

## THE USAO'S OBLIGATIONS

2     3.    The USAO agrees to:

3          a.    Not contest facts agreed to in this agreement.

4          b.    Abide by all agreements regarding sentencing contained

5     in this agreement.

6          c.    At the time of sentencing, move to dismiss the

7     remaining counts of the indictment as against defendant.  Defendant

8     agrees, however, that at the time of sentencing the Court may

9     consider any dismissed charges in determining the applicable

10    Sentencing Guidelines range, the propriety and extent of any

11    departure from that range, and the sentence to be imposed.

12         d.    At the time of sentencing, provided that defendant

13    demonstrates an acceptance of responsibility for the offense up to

14    and including the time of sentencing, recommend a two-level reduction

15    in the applicable Sentencing Guidelines offense level, pursuant to

16    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17    additional one-level reduction if available under that section.

18                          NATURE OF THE OFFENSE

19    4.    Defendant understands that for defendant to be guilty of

20    the crime charged in count one, that is, conspiracy to distribute a

21    controlled substance, in violation of Title 21, United States Code,

22    Sections 846 and 841(b)(1)(C), the following must be true:

23         a.    First, there was an agreement between two or more

24    persons to distribute oxycodone and hydrocodone, each a Schedule II

25    narcotic drug controlled substance; and

26         b.    Second, defendant joined in this conspiracy knowing of

27    its purpose and intending to help accomplish it.

28

3

PENALTIES

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C), is: 20 years imprisonment; a lifetime period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  Defendant understands that the statutory minimum term of supervised release that the Court must impose is a term of supervised release not less than three years.

6.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation,

4

parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

9. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the stipulated Sentencing Guidelines factors set forth below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown, and continuing to a date not earlier than July 27, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and

intentionally participated in a conspiracy to distribute controlled

drugs including the Schedule II narcotics oxycodone and hydrocodone.

The conspirators would control sham medical clinics in the

greater Los Angeles area for the purpose of profiting from the sale

of illegitimate prescriptions for controlled substances, including

the narcotic painkillers oxycodone and hydrocodone.  Defendant and

other conspirators would retain corrupt doctors who would allow the

conspirators to sell controlled drug prescriptions written in the

doctors' names and license numbers.  Defendant and the other

conspirators also stole the identities of other doctors and issued

prescriptions in those doctors' names.  Defendant would either

personally acquire prescription pads in the names of such doctors or

would arrange for other conspirators to do so.  The conspirators

staffed receptionists at the clinics who would falsely verify the

fraudulent prescriptions when pharmacists periodically called to

inquire about them.  Defendant would either personally sell narcotic

prescriptions to black market customers or would arrange for couriers

working at his directions to do so.  Defendant also would sell bulk

quantities of oxycodone and hydrocodone to black market customers,

which defendant acquired from fraudulent prescriptions filled at

pharmacies by other conspirators.

The conspiracy involved the trafficking of not less than 12,000

pills of 30-mg oxycodone (360 total grams) and not less than 3,000

pills of 10-mg hydrocodone (30 total grams) via the sale of either

bulk quantities of pills or of fraudulent prescriptions issued in the

names and purported authority of at least four physicians.

In furtherance of the conspiracy, defendant and the conspirators

committed the following actions, among others:

6

<u>January–May 2016 Undercover Purchases</u>

On four occasions between January 2016 and May 2016, defendant arranged to sell fraudulent oxycodone prescriptions to a person he believed was a black market customer, but who was in fact a law enforcement cooperator ("CS-1"). Defendant negotiated each transaction with CS-1 and then instructed CS-1 to provide fraudulent patient identification information to co-conspirator Ralph Manning ("R. Manning"). R. Manning completed the fraudulent prescriptions and delivered them to CS-1, in exchange for $200 each, as follows:

- On January 27, 2016, CS-1 met with R. Manning at a parking lot and received a fraudulent prescription purportedly issued by a doctor with initials R.G. ("R.G.") for 150 pills of 30-mg oxycodone in exchange for $200 cash.

- On February 5, 2016, CS-1 met R. Manning at a parking lot and received a fraudulent R.G. prescriptions, each for 150 pills of 30-mg oxycodone (450 total pills), in return for $600 cash.

- On February 24, 2016, CS-1 met R. Manning at a 7-11 convenience store and received three R.G. prescriptions each for 150 pills of 30-mg oxycodone (450 total pills), in exchange for $600 cash.

- On May 12, 2016, CS-1 met defendant at a grocery store parking lot and received four blank prescriptions, two of which were R.G. prescriptions and two of which were prescriptions under the name of another doctor with initials E.S. ("E.S."), in exchange for $400.

- Later that day, CS-1 met with R. manning at a parking lot, where CS-1 received two more prescriptions each for 120 pills of 30-mg oxycodone (240 total pills), each written in the name and medical license number of E.S., in exchange for $400.

Identity Theft of E.S. and L.G.W.

During the conspiracy, defendant sold fraudulent prescriptions for oxycodone and other controlled drugs to customers that were issued under the name and license number of a doctor with initials E.S.  Defendant and the conspirators ultimately became aware that, at the time E.S. purportedly wrote the fraudulent prescriptions, E.S. was hospitalized or deceased.  When defendant learned that was the case, he spoke with a co-conspirator receptionist at one of the clinics and instructed the receptionist to concoct false explanations to provide to pharmacists to conceal that E.S. never wrote or authorized the prescriptions.

On May 19, 2016, defendant spoke with a doctor with initials L.G.W., during which defendant offered L.G.W. a "very lucrative position" working for defendant, in which L.G.W. would "sit home making $20,000 a month doing nothing."  L.G.W. declined the offer. Five days later, defendant sent a text message to a co-conspirator that contained L.G.W.'s full name, medical license number, and national provider identifier number, for the co-conspirator to use in ordering prescription pads in L.G.W.'s name.  Over the next two months, defendant and the conspirators sold fraudulent prescriptions purportedly issued by L.G.W. for oxycodone and other controlled drugs, totaling not less than 9,450 pills of 30-mg oxycodone and 990 pills of 10-mg hydrocodone.  On multiple occasions, defendant personally sold fraudulent L.G.W. prescriptions to customers.

In June 2016, defendant spoke with another medical practitioner, G.J., in an effort to hire G.J. to issue narcotic prescriptions at a clinic.  In a phone call with another conspirator, defendant stated that the G.J. would see 12 to 15 patients per day, two to three times

per week, and would receive $300 per prescription; defendant and the conspirator agreed to send test patients to the clinic to ensure that G.J. would be able to supply the conspirators with the prescriptions they wanted.

May 2016 Sale of Oxycodone to F. MANNING

On May 18, 2016, defendant met with co-defendant Freddie Manning ("F. Manning") in Encino, California, where defendant and co-defendant Gary Henderson delivered approximately 500 pills of oxycodone and 160 pills of hydrocodone to F. Manning in exchange for $1,600.  A law enforcement officer acting in coordination with the investigators in this matter conducted a traffic stop of F. Manning's car and seized the hydrocodone pills, but did not find the oxycodone pills.  Thereafter, defendant, F. Manning, and other conspirators arranged to send what they knew and intended to be a fraudulent medical record to law enforcement, which falsely stated that the seized hydrocodone had been legitimately prescribed to F. Manning by a doctor with initials N.D.  In fact, as defendant and the other conspirators knew, N.D. did not write the letter that was sent to law enforcement, nor did N.D. ever provide any treatment of F. Manning or give any prescription to F. Manning.

SENTENCING FACTORS

10.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.    Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 30 | U.S.S.G. § 2D1.1(c)[1] |
| Role in the Offense: | +3 | U.S.S.G. § 3B1.1 |
| Obstruction of Justice: | +2 | U.S.S.G. § 3C1.1 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Stipulated Variance: | -2[2] | |
| Total Offense Level: | 30 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(d)) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 23 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.

---

[1] Under U.S.S.G. § 2D1.1, Application Note 8, 390 grams of oxycodone and hydrocodone are the equivalent of 2,613 kilograms of marijuana.

[2] The parties stipulate to the further two-level downward variance because defendant gave a full confession immediately after his arrest and, soon thereafter, defendant timely assisted the government in identifying a then-unidentified co-conspirator.

12.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

14.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

1       h.    Any and all rights to pursue any affirmative defenses,

2 Fourth Amendment or Fifth Amendment claims, and other pretrial

3 motions that have been filed or could be filed.

4 <u>WAIVER OF APPEAL OF CONVICTION</u>

5     15.  Defendant understands that, with the exception of an appeal

6 based on a claim that defendant's guilty plea was involuntary, by

7 pleading guilty defendant is waiving and giving up any right to

8 appeal defendant's conviction on the offense to which defendant is

9 pleading guilty.

10 <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

11     16.  Defendant agrees that, provided the Court imposes a total

12 term of imprisonment that is within or below the Sentencing

13 Guidelines range corresponding with a total offense level of 30 and

14 the criminal history category applied by the Court, defendant gives

15 up the right to appeal all of the following: (a) the procedures and

16 calculations used to determine and impose any portion of the

17 sentence; (b) the term of imprisonment imposed by the Court; (c) the

18 fine imposed by the court, provided it is within the statutory

19 maximum; (e) the term of probation or supervised release imposed by

20 the Court, provided it is within the statutory maximum; and (f) any

21 of the following conditions of probation or supervised release

22 imposed by the Court: the conditions set forth in General Order 18-10

23 of this Court; the drug testing conditions mandated by 18 U.S.C.

24 §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions

25 authorized by 18 U.S.C. § 3563(b)(7); and the conditions agreed to by

26 defendant in paragraph 2(i) above.

27     17.  The USAO agrees that, provided (a) all portions of the

28 sentence are at or below the statutory maximum specified above and

(b) the Court imposes a total term of imprisonment is within or above the Sentencing Guidelines range corresponding with a total offense level of 30 and the criminal history category applied by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

18.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

19.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

20.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

21. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was to be dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

14

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

22.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

23.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the stipulated Sentencing Guidelines calculations in this plea agreement are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

24.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

25.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

26.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____
BENJAMIN R. BARRON
Assistant United States Attorney

_____ _____
                                         Date

_____ _____
MINAS MATOSYAN                           4-2-2019
Defendant                                Date

_____ _____
GARO GHAZARIAN                           April 3, 2019
Attorney for Defendant                   Date

4/4/19
Date

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

1  contained in this agreement.  No one has threatened or forced me in

2  any way to enter into this agreement.  I am satisfied with the

3  representation of my attorney in this matter, and I am pleading

4  guilty because I am guilty of the charges and wish to take advantage

5  of the promises set forth in this agreement, and not for any other

6  reason.

7

8  MINAS MATOSYAN                          Date   4-2-2019
   Defendant

9

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am MINAS MATOSYAN's attorney.  I have carefully and thoroughly

12  discussed every part of this agreement with my client.  Further, I

13  have fully advised my client of his rights, of possible pretrial

14  motions that might be filed, of possible defenses that might be

15  asserted either prior to or at trial, of the sentencing factors set

16  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge: no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is an informed and voluntary one; and the factual basis set

23  forth in this agreement is sufficient to support my client's entry of

24  a guilty plea pursuant to this agreement.

25

26  GARO GHAZARIAN                          Date   April 3, 2019
   Attorney for Defendant

27  MINAS MATOSYAN

28

                              18